**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**

**Aaron Wood**                                                                                                    **Plaintiff**

**v.**                          **CASE NO. 3:13CV00248 JTR**

**Carolyn W. Colvin, Acting Commissioner,
Social Security Administration**                                               **Defendant**

## ORDER AFFIRMING THE COMMISSIONER

Aaron Wood seeks judicial review of the denial of his application for supplemental security income (SSI) and child's insurance benefits (CIB). Wood previously applied for disability and was denied.[1] He applied for SSI and CIB on January 26, 2011, with an alleged onset date of January 1, 1998.[2] The governing child disability rules require that Wood establish disability prior to his twenty-second birthday.[3] Accordingly, the relevant time period for purposes of CIB is January 1, 1998 to January 12, 2012. As to Wood's SSI claim, benefits cannot be received prior to the application date.[4] Therefore, the alleged onset date with respect to SSI is January 26, 2011. Wood bases disability on attention deficit hyperactivity disorder

---

[1]SSA record at p. 148.

[2]*Id.* at pp. 119 & 125.

[3]20 C.F.R. § 404.350.

[4]*Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989); 20 C.F.R. § 416.335.

(ADHD), bipolar, anxiety, panic attacks, mood swings, insomnia and bad knees.[5]

**The Commissioner's decision.** The Commissioner's ALJ determined Wood had not attained age twenty-two as of the date of filing for CIB.[6] Wood has not engaged in substantial gainful activity since his eighteenth birthday or since the date he filed for SSI.[7] Wood has severe impairments - mood disorder, NOS; ADHD, combined type; bipolar disorder; anxiety disorder, NOS; depressive disorder; dependent personality traits; pain disorder with both medical and psychological factors; knee pain and morbid obesity.[8] None of Wood's severe impairments meet the Listings,[9] and Wood can perform light work with the following restrictions:

- occasional stooping, crouching, crawling and kneeling;

- interpersonal contact is restricted to limited interactions;

- meeting and greeting the public or answering simple questions may occur on occasion, but is not considered a job duty or requirement;

- interaction with co-workers is superficial and infrequent;

---

[5]SSA record at p. 153.

[6]*Id.* at p. 11.

[7]*Id.* at p. 12.

[8]*Id.*

[9]*Id.*

- complexity of tasks can be learned by demonstration or repetition within 30 days, with few variables and little judgment; and

- supervision required is simple, direct and concrete.[10]

The ALJ held that Wood has no past relevant work,[11] but can perform the positions of hand packer and janitorial work (cleaner), positions identified by the vocational expert (VE) as available in the state and national economies.[12] Wood's application was denied.[13]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[14] Wood filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15]

---

[10]*Id.* at pp. 13-14.

[11]*Id.* at p. 22.

[12]*Id.* at pp. 22-23.

[13]*Id.* at p.23.

[14]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any

**Wood's allegations.** Wood maintains that the ALJ's denial of disability benefits is not supported by substantial evidence because the hypothetical presented did not account for all of his limitations.

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[16] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the ALJ's denial of benefits.[17]

**The hypothetical.** Wood maintains that the ALJ erred in the hypothetical presented to the VE because (1) additional limitations based on Wood's mental impairments were not included; and (2) Wood's obesity was not included.

During the hearing, the ALJ presented the VE with a hypothetical of an individual capable of light work with the following limitations:

- occasional stooping, crouching, crawling and kneeling;
- interpersonal contact is restricted to limited interactions;
- meeting and greeting the public or answering simple questions

---

applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[16]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[17]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

> may occur on occasion, but are not considered a job duty or requirement;
> 
> • interaction with coworkers is superficial and infrequent;
> 
> • complexity of tasks can be learned by demonstration or repetition within thirty days, with few variables and little judgment; and
> 
> • supervision required is simple, direct and concrete.[18]

The limitations take into account Wood's obesity and mental impairments. Wood argues, however, that the limitations do not sufficiently address these impairments. The inquiry is therefore whether the ALJ's hypothetical is supported by substantial evidence. A review of the record reveals that it is.

With respect to Wood's mental impairments, the records establish that, with treatment, Wood's mental impairments are controlled. Wood has been treated by mental health professionals since his early teens. He was eventually diagnosed with bipolar disorder and ADHD, combined type, and treated with individual, group and family therapy sessions, as well as prescription medications.[19] Although throughout his teen years he exhibited behavior problems both at school and at home, when he was compliant with his medications, he improved.[20] Indeed, in notes from 2006,

---

[18]SSA record at pp. 47-48.

[19]*Id.* at pp. 1142 & 1146.

[20]*Id.* at pp. 315, 334, 337-338, 351, 353, 355, 359, 391-392, 394-401, 404, 407, 409-410, 420-422, 425, 428-429, 435-436, 438, 453-456, 461-462, 467-470, 472, 474-

teachers described him as doing well in class and as "one of [the] best students."[21] In late 2006, Wood seemed motivated to work. He indicated in a number of therapy sessions that he had applied for part time jobs or had an interest in certain career paths.[22] Multiple notes indicate that he got along well with others and had a smile on his face.[23]

Subsequent assessments and notes from Wood's primary care physician also indicate mental health stability when treated.[24] In November 2008, Wood denied any complaints and indicated that he was having no problems with his medications.[25]

---

475, 558, 575, 596-597, 605-606, 611-613, 620-621, 623-624, 641, 648, 690, 692, 702-703, 705, 710-711, 718, 721, 723, 737, 739-740, 766, 785, 788-789, 805, 814, 825, 827, 829, 832, 844, 848, 853, 855, 857-858, 866, 868-869, 871, 876, 899, 910, 912, 916-917, 927-928, 940, 947, 964-965, 1000, 1007, 1027, 1033, 1035, 1039, 1042, 1045, 1048, 1056, 1063, 1191 & 1205.

[21]*Id.* at pp. 721 & 723.

[22]*Id.* at pp. 647, 746 & 754.

[23]*Id.* at pp. 391, 395, 435, 449, 453, 456, 461, 469, 606, 620, 648, 739, 855 & 869.

[24]It is important here to note Wood's argument that if his mental impairments were ever controlled, it was through extensive, almost daily therapy sessions, and he cannot be expected to maintain such sessions when employed. While it is true that throughout his school years Wood received almost daily therapy sessions, subsequent medical records indicate mental stability at a time when his mental health was treated by a primary care physician, and Wood attended no therapy sessions.

[25]SSA record at p. 1205.

Wood reported the same in February 2009.[26] In April 2009, Wood was evaluated by Arkansas Rehabilitation Services, a division of the Arkansas Department of Career Education that provides vocational support to individuals with impairments.[27] The assessment noted that Wood "feels stable on his medication at this time."[28] It found average to above-average intellectual and academic ability and determined that if Wood remained compliant with mental health care, he "may reasonably be expected to function vocationally by means of skilled to professional employment."[29] A 2010 treatment note indicates that Wood had "good symptom control on current medications."[30] These notes support the ALJ's hypothetical because they indicate that Wood's mental impairments can be controlled through treatment.[31]

Although Wood was admitted to the hospital with suicidal ideation in February 2012, at the time of discharge he was "feeling good," laughing and joking, and

---

[26]*Id.* at p. 1203.

[27]*Id.* at p. 1174.

[28]*Id.*

[29]*Id.* at pp. 1176-1177.

[30]*Id.* at p. 1191.

[31]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

...
...

recognized that he needed to quit isolating himself in order to improve his mood.[32] He was subsequently seen by a mental health professional who observed that Wood felt less depressed and experienced no significant stress since his release from the hospital.[33] A mental status exam conducted on Wood was normal.[34] Wood reported that his thoughts of suicide were triggered by family conflict and a break-up with his girlfriend.[35] The examiner opined that with treatment compliance, the prognosis for Wood was good.[36] The last note from the mental health clinic indicates slight progress.[37]

The assessments completed by state physicians provide additional support for the ALJ's hypothetical. In a February 2011 Mental Diagnostic Evaluation, Wood reported that his moods were fairly stable, though he was having some breakthrough sadness, loss of motivation and drive.[38] The physician determined that Wood can

- communicate and interact in a socially adequate manner;

---

[32] SSA record at pp. 1300 & 1305.

[33] Id. at p. 1325.

[34] Id. at p. 1324.

[35] Id. at p. 1325.

[36] Id. at p. 1324.

[37] Id. at p. 1321.

[38] Id. at p. 1242.

- communicate in an intelligible and effective manner;

- cope with typical demands of basic work-like tasks;

- attend and sustain concentration on basic tasks;

- sustain persistence in completing tasks; and

- complete work-like tasks within an acceptable timeframe unless the tasks aggravate his pain issues.[39]

A subsequent Mental Residual Functional Capacity Assessment indicated that Wood is capable of unskilled work and "able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work, complexity of tasks is learned and performed by rote, few variables, little judgment: supervision required is simple, direct and concrete."[40] This determination was affirmed by a second state physician in May 2011.[41]

In his brief, Wood places great emphasis on his Global Assessment of Functioning (GAF) scores, citing to *Pate-Fires v. Astrue*.[42] The ALJ declined to give controlling weight to Wood's GAF scores because he determined that they conflict

---

[39] *Id.* at pp. 1247-1248.

[40] *Id.* at p. 1253.

[41] *Id.* at p. 1298.

[42] *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009).

with the objective medical evidence.[43] In *Pate-Fires* the Eighth Circuit reversed a decision denying disability and awarded full benefits. The Court's decision paid particular attention to Pate-Fires's GAF scores, determining "[Pate-Fires's] GAF scores demonstrate she suffers from moderate to complete impairment in work-related skills."[44] The situation of the claimant in *Pate-Fires*, however, stands in contrast to Wood's situation. The vast majority of Pate-Fires's GAF assessments were at 50 and below, with a large number of assessments at 40 and below.[45] Wood has frequently been assessed above 50,[46] and has been assessed at 40 or below on only very limited occasions.[47] Further, the objective medical evidence, discussed above, conflicts with Wood's GAF scores. The objective evidence in *Pate-Fires* supported the GAF assessments.[48] Additionally, GAF scores are not controlling. In *Jones v. Astrue*, the Eighth Circuit stated, "the district court correctly observed, 'an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the

---

[43]SSA record at p. 19.

[44]*Pate-Fires,* 564 F.3d at 947.

[45]*Id.* at 944.

[46]SSA record at pp. 283, 298, 332, 334, 401, 568, 736, 856, 911, 926, 1004, 1247 & 1304.

[47]*Id.* at pp. 341 & 1304.

[48]*Pate-Fires*, 564 F.3d at 943-946.

evidence requires it.'"[49]

As to Wood's obesity, there is very little in the record addressing physical impairments as a result of obesity. There is only one note prior to 2009 indicating any kind of joint pain.[50] Although three subsequent notes identify some knee and wrist pain, Wood is prescribed only pain medications.[51] Indeed, an x-ray of Wood's knee conducted in 2011 showed no abnormalities.[52] Additionally, there are no records indicating that Wood is suffering any end organ damage or even moderate impairments associated with obesity. The records do not support limitations beyond that prescribed by the ALJ in the hypothetical.

In May 2011, a Physical Residual Functional Capacity Assessment was conducted.[53] The state physician determined that Wood can occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand/walk about six hours in an eight hour workday and sit about six hours in an eight hour workday.[54] Although the

---

[49]*Jones*, 619 F.3d at 974 (internal citations omitted).

[50]SSA record at p. 262.

[51]*Id.* at pp. 1191, 1201 & 1203.

[52]*Id.* at p. 1272.

[53]*Id.* at p. 1277.

[54]*Id.* at p. 1278.

physician acknowledged that due to Wood's obesity, weight bearing joint pain was not surprising, he assessed no further limitations.[55] His opinion was affirmed by a second state physician.[56]

What is perhaps most telling is Wood's own assessment of his physical limitations. At the hearing, Wood indicated that it is his mental impairments, not physical, that most affect his ability to work.[57]

To support the argument that the ALJ erred in excluding Wood's obesity from the hypothetical, Wood cites to *Morrison v. Apfel*.[58] Wood's reliance on *Morrison* is misled. In *Morrison*, the Eighth Circuit determined that it was error for the ALJ to exclude mention of the claimant's obesity in the hypothetical because (1) the claimant had a history of obesity and (2) the claimant's treating physician stated in medical records that the claimant's obesity was his "biggest problem."[59] While it appears that Wood has had issues with his weight for a number of years, it was never identified as a major medical issue. There is certainly nothing in the record identifying obesity as

---

[55]*Id.* at p. 1282.

[56]*Id.* at p. 1297.

[57]*Id.* at p. 43.

[58]*Morrison v. Apfel*, 146 F.3d 625 (8th Cir. 1998).

[59]*Id.* at 628-629.

Wood's "biggest problem." *Morrison* is not applicable to the instant case.

Although not substantial evidence on their own, Wood's activities of daily living provide further support for the ALJ's hypothetical. In the Function Report, Wood states that during the day he will walk until his knee starts to hurt, write some of his novel and draw.[60] He cares for a cat - providing food and water and cleaning out the litter box.[61] He is able to tend to his personal care, prepares his own meals, washes laundry and does some cleaning.[62] Although he does not drive, he is able to go out alone and has friends over to play cards.[63]

A reasonable mind would accept the evidence as adequate to support the ALJ's hypothetical limitations. The ALJ's hypothetical is supported by substantial evidence.

**Conclusion.** Substantial evidence supports the ALJ's decision. No error occurred. For these reasons, the court DENIES Wood's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

---

[60]SSA record at p. 186.

[61]*Id.* at p. 187.

[62]*Id.* at pp. 187-188.

[63]*Id.* at pp. 189-190.

It is so ordered this 11th day of March, 2015.

_____
UNITED STATES MAGISTRATE JUDGE